# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NOWIN A. TEJERA, | : | |
| Plaintiff, | : | Civ. No. 13-3872 (RBK) (AMD) |
| v. | : | **OPINION** |
| GARY M. LANIGAN, et al., | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

## I.  INTRODUCTION

Plaintiff is a state inmate currently incarcerated at South Woods State Prison in Bridgeton, New Jersey.  He is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983.  Plaintiff's application to proceed *in forma pauperis* will be granted based on the information provided therein.  Accordingly, the Clerk will be ordered to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit.  For the reasons set forth below, the complaint will be dismissed without prejudice.

## II.  BACKGROUND

The allegations of the complaint shall be accepted as true for purposes of this screening. Plaintiff names three defendants in this action:  (1) Dr. Yoslov – Nephrologist Specialist Trenton State Prison; (2) Dr. Barber – Nephrologist Specialist South Woods State Prison; and (3) Gary M. Lanigan – Commissioner of the Department of Corrections.

1

Plaintiff states that he was placed in the infirmary at the Trenton State Prison on March 10, 2011, so that blood and urine samples could be taken around the clock. Dr. Yoslov then told plaintiff that his kidneys were not functioning properly. Dr. Yoslov sent plaintiff to St. Francis Hospital for a kidney biopsy on March 30, 2011. On May 6, 2011, Dr. Yoslov told plaintiff that he had a chronic liver disease, IgA Nephropathy, for which there was no cure.

Plaintiff states that the doctor at St. Francis told him that he should have been put on steroids as soon as they found out his had a chronic liver disease. Furthermore, plaintiff alleges that he would not have been placed on dialysis and would not have caught a blood infection that almost killed him had this been done. He claims that his kidneys went from functioning at 100 % to 20 % from May 6, 2011 to March 23, 2012, yet he was not put on dialysis.

Plaintiff states that he was sent to South Woods State Prison on April 4, 2012, as that prison has a dialysis unit. Dr. Barber is in charge of the dialysis unit. Plaintiff was initially placed on dialysis three times a week but was subsequently lowered to two times a week. He was in severe pain and suffering but was never given an explanation as to what caused his kidney disease when he asked.

Plaintiff alleges due to his kidney disease an edema went into his lung which caused pneumonia. Afterwards, plaintiff caught a blood infection which contaminated the catheter in his chest causing it to be placed elsewhere.

Plaintiff asserts that Dr. Barber is responsible for not putting him on dialysis, nor providing him with proper medication. Furthermore, when he was put on dialysis, he caught a blood infection and almost died.

Plaintiff also claims that defendant Lanigan, as Commissioner of the Department of Corrections, is responsible for the medical treatment of all who are incarcerated. Plaintiff states

that Lanigan "has been made aware of these very serious accusations and medical problems and has made no effort to resolve these issues." (Dkt. No. 1 at p. 7.) Plaintiff states that there have been class actions and personal injury claims made, and some deaths have even occurred.

Plaintiff seeks monetary damages in the amount of $75,000 for medical malpractice, $50,000 for pain and suffering and $50,000 for negligence.

### III. STANDARD OF REVIEW

A. Standard for *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

   B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. DISCUSSION

Based on the allegations of the complaint, it appears as if plaintiff is attempting to bring a denial/deprivation of medical care claim against the defendants. With respect to alleging a constitutional claim for denial of medical care, the Third Circuit has stated the following:

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam). The Third Circuit has also noted that deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v.*

5

*Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff states in the complaint that he is seeking monetary damages against the defendants for medical malpractice and negligence. (*See* Dkt. No. 1 at p. 10.) Allegations of mere negligence or medical malpractice are insufficient to show that a defendant is deliberately indifference to a serious medical need. *See Steedley v. McBride*, 446 F. Appx 424, 425-26 (3d Cir. 2011) (per curiam) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (citing *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999)).

A. <u>Defendant Yoslov</u>

In this case, Dr. Yoslov sent plaintiff to St. Francis Hospital for a kidney biopsy. Dr. Yoslov then told plaintiff he had a kidney disease for which there was no cure. Plaintiff complains that he should have been put on a different medication earlier by Dr. Yoslov, and that had he been put on this medication, he could have possibly avoided dialysis and a subsequent blood infection. Nonetheless, the complaint as written only amounts to a disagreement regarding the treatment plaintiff was receiving from Dr. Yoslov and is insufficient to state a deprivation/denial of medical care claim. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam) (stating that complaint that alleges physician was negligent in diagnosing and treating a medical condition does not state a valid claim of medical mistreatment and that mere disagreement as to proper medical treatment does not support a claim of inadequate medical care) (citations omitted). Plaintiff does not state that St. Francis Hospital told Dr. Yoslov that he should have received a certain type of medication or be placed on dialysis. Instead, plaintiff only states that a doctor from St. Francis hospital told him that he

should be placed on a certain type of medication for his illness. As such, the allegations as stated do not state that Dr. Yoslov (1) knew of plaintiff's need for medical treatment but intentionally refused to provide it; (2) delayed necessary medical treatment based on a nonmedical reason; or (3) prevented a plaintiff from receiving needed or recommended treatment. Thus, plaintiff has failed to allege that Dr. Yoslov acted with deliberate indifference. Indeed, in his claims for relief, plaintiff asserts that he is entitled to damages for medical malpractice and negligence which is insufficient to state a § 1983 claim. *See Steedley*, 446 F. Appx at 425-26. Therefore, plaintiff fails to state a claim against Dr. Yoslov.

   B.  Defendant Barber

With respect to Dr. Barber, plaintiff also fails to state a deprivation/denial of medical care claim. Construing the complaint liberally, plaintiff may be asserting a claim against Dr. Barber because he lowered his dialysis treatment from three times a week to two times a week. Such an allegation amounts to merely plaintiff's disagreement with how Dr. Barber treated his kidney disease and is insufficient to state a claim. *See Lenhart*, 528 F. App'x at 115.

Furthermore, it is worth noting that plaintiff's complaint with his treatment (or lack thereof) for his kidney disease appears to arise before Dr. Barber began treating plaintiff. Thus, Dr. Barber could not be deliberately indifferent at that time as he was not involved in the treatment (or lack thereof) plaintiff based on the complaint. For example, plaintiff states that his kidney function depreciated from 100% to 20 % from May 6, 2011 to March 23, 2012. However, plaintiff states that he was not transferred to South Woods State Prison until April 4, 2012, when he was then placed on dialysis. Thus, for the period of time that his kidney function was deteriorating, and not receiving the proper medical care, he was presumably not under the care of Dr. Barber.

C. <u>Defendant Lanigan</u>

Finally, plaintiff also fails to state a claim against defendant Lanigan. It appears as if plaintiff is asserting that Lanigan is liable under a theory of *respondeat superior* as he is the Commissioner of the Department of Corrections and is ultimately responsible for plaintiff's medical care and treatment. "In order for liability to attach under § 1983, a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, No. 12-4564, 2013 WL 3834399, at *2 (3d Cir. July 25, 2013) (per curiam) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). In this case, plaintiff's allegations against Lanigan appear to be based primarily on a *respondeat superior* theory in his capacity as Commissioner of the Department of Corrections. This is insufficient to state a § 1983 claim against Lanigan.

Plaintiff does claim in conclusory fashion that "the Commissioner of D.O.C. has been made aware of these very serious accusations and medical problems." (Dkt. No. 1 at p. 7.) It is worth noting that numerous courts have explained that a plaintiff states a claim by alleging that a supervisory defendant reviewed a grievance where the plaintiff alleges an ongoing violation as she "'is personally involved in that violation because [s]he is confronted with a situation [s]he can remedy directly.'" *Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008)); *see also Zappulla v. Fischer*, No. 11-6733, 2013 WL 1387033, at *10 (S.D.N.Y. Apr. 5, 2013) ("[T]he Complaint further alleges that Defendant Lee, after being informed of that ongoing violation through the grievance process, failed to remedy that wrong. Those allegations . . . are adequate to

state a claim against Lee.") (citations omitted); *Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted), *report and recommendation adopted by*, 2012 WL 4370929 (W.D. Pa. Sept. 24, 2012); *Williams v. Johnson*, No. 10-1290, 2011 WL 1396967, at *5 (E.D. Va. Apr. 11, 2011) ("In support of his argument, Williams states that Johnson was made aware of these violations through appeals to denials of grievances that Williams filed. To the extent that the [allegations] relate to ongoing constitutional violations that defendant Johnson was made aware of, Williams has plausibly stated a claim for which Johnson made be liable."); *Binsack v. Lackawanna Cnty. Prison*, No. 10-535, 2010 WL 4973309, at *3 (M.D. Pa. Oct. 14, 2010) ("A prisoner's grievance or complaint regarding ongoing abuse may be sufficient to put a prison official on notice of such abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims.") (citing *Atkinson v. Taylor*, 316 F.3d 257, 270-71 (3d Cir. 2003)), *report and recommendation adopted by*, 2010 WL 4956329 (M.D. Pa. Dec. 1, 2010). In this case, however, plaintiff only alleges in conclusory and general fashion that Lanigan was made aware of "these serious accusations and medical problems." He does not allege that Lanigan was put on notice about a purported ongoing constitutional violation through the grievance process. Without further factual support in the complaint, the Court need not accept plaintiff's general assertions to the extent that plaintiff is attempting to show that Lanigan was put on notice about a purported ongoing constitutional violation. *See Iqbal*, 556 U.S. at 678 (stating that a complaint does not suffice to

9

state a claim if it tenders naked assertions devoid of further factual enhancement) (citation omitted). Thus, for the foregoing reasons, plaintiff fails to state a claim against Lanigan.

D. Request for the Appointment of Counsel

Plaintiff has filed an application for the appointment of counsel. (*See* Dkt. No 1-2.) Indigent persons raising civil rights claims have no absolute constitutional right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See Tabron v. Grace*, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993); *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (per curiam) (reiterating the *Tabron* factors) Applying these factors to this case, the Court will deny plaintiff's request for the appointment of counsel without prejudice. The complaint has been screened and dismissed without prejudice for failing to state a claim. Furthermore, this case is at its initial stages making several of the factors outlined above difficult to evaluate. *See Miller v. New Jersey Dep't of Corr.*, Civ. No. 08-3335, 2009 WL 482379, at *15 (D.N.J. Feb. 25, 2009) (citing *Chatterjee v. Phila. Federation of Teachers*, Civ. Nos. 99-4122, 99-4233, 2000 WL 1022979 (E.D. Pa. July 18, 2000).

V. CONCLUSION

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant plaintiff leave to amend the complaint unless amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). In this case,

because it is possible that plaintiff may be able to supplement his complaint with facts sufficient Ito overcome the deficiencies noted herein, the complaint will be dismissed without prejudice. An appropriate order will be entered.

DATED:  January 30, 2014

                                                s/Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge